Efstratios SAVELIS, Theodoros Fragidokis and Photios Theofanou, Appellants,

v.

E. VLACHOS, Master of the Greek THE MICHALAKIS, E. O. Douglas, Jr., Immigration Inspector at Newport News, Va., et al., Appellees.

No. 7441.

United States Court of Appeals Fourth Circuit.

Argued May 31, 1957.

Decided Oct. 7, 1957.

Jacob L. Morewitz, Newport News, Va., for appellants.

Walter B. Martin, Jr., and William F. Davis, Asst. U. S. Atty., Norfolk, Va. (Vandeventer, Black & Meredith, and L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., on brief), for appellees.

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

PER CURIAM.

This is an appeal by three alien seamen from an order discharging a writ of habeas corpus as moot and denying a declaratory judgment to the effect that appellants had been illegally detained by the immigration authorities and the master of the vessel on which they had entered the port of Newport News, Va. No orders of deportation were entered; and it may well be that the case is now entirely moot as the seamen are not within the jurisdiction of the court and the absence of deportation orders distinguishes the case from Koloris v. Johnson, 4 Cir., 195 F.2d 518. The facts are fully stated in the opinion of the District Judge and need not be here repeated. See Savelis v. Vlachos, 137 F. Supp. 389. It appears that when the vessel entered the port appellants were given D–1 landing permits,[1] which required them to depart on the vessel. Later they applied for D–2 permits, which would have permitted departure on another vessel and stated that they were in need of hospital treatment, but did not make any showing to the immigration authorities that departure on another vessel would be possible and stated that they did not intend to depart on the vessel on which they had arrived. They refused to accept the hospitalization tendered them by the vessel and said that they would not enter a hospital until advised to do so by their lawyer, who adopted a defiant attitude and, when asked by the immigration authorities to state his position with regard thereto, replied that it was none of their business. The D–1 permit was then revoked and the seamen

---

1. D–1 and D–2 permits are issued pursuant to sec. 252(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1282(a), the pertinent portions of which are as follows:

    "(a) No alien crewman shall be permitted to land temporarily in the United States except as provided in this section and sections 1182(d) (3), (5) and 1283 of this title. If an immigration officer finds upon examination that an alien crewman is a nonimmigrant under paragraph (15) (D) of section 1101(a) of this title and is otherwise admissible and has agreed to accept such permit, he may, in his discretion, grant the crewman a conditional permit to land temporarily pursuant to regulations prescribed by the Attorney General, subject to revocation in subsequent proceedings as provided in subsection (b) of this section, and for a period of time, in any event, not to exceed—(1) the period of time (not exceeding twenty-nine days) during which the vessel or aircraft on which he arrived remains in port, if the immigration officer is satisfied that the crewman intends to depart on the vessel or aircraft on which he arrived; or (2) twenty-nine days, if the immigration officer is satisfied that the crewman intends to depart, within the period for which he is permitted to land, on a vessel or aircraft other than the one on which he arrived.

    "*Revocation; expenses of detention.* (b) Pursuant to regulations prescribed by the Attorney General, any immigration officer may, in his discretion, if he determines that an alien is not a bona fide crewman, or does not intend to depart on the vessel or aircraft which brought him, revoke the conditional permit to land which was granted such crewman under the provisions of subsection (a) (1) of this section, take such crewman into custody, and require the master or commanding officer of the vessel or aircraft on which the crewman arrived to receive and detain him on board such vessel or aircraft, if practicable, and such crewman shall be deported from the United States at the expense of the transportation line which brought him to the United States. Until such alien is so deported, any expenses of his detention shall be borne by such transportation company."

    That this statute was intended to vest wide discretion in the immigration authorities as to the issuance and revocation of such permits, see S.Rep. No. 1515, 81st Cong. 2d Sess. pp. 550–558.

were ordered detained on the vessel. This is not a case where a deportation order was entered and we must consider the validity of such order under the administrative procedure act. The only question in the case is whether the immigration officer abused the discretion vested in him by statute in refusing to issue a D–2 permit and in revoking the D–1 permit which he had previously issued. We agree with the District Judge that no such abuse of discretion has been shown. The decision appealed from will accordingly be affirmed for reasons adequately stated in the opinion below.

Affirmed.